CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

February 23, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| DINO KATTATO, Individually and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No. 7:23-CV-00485 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CROSS COUNTRY HEALTHCARE, INC., and MEDICAL DOCTOR ASSOCIATES, LLC, d/b/a CROSS COUNTRY LOCUMS, | ) ) ) ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) ) ) | By: C. Kailani Memmer United States Magistrate Judge |

This matter is before the court on plaintiff Dino Kattato's (Kattato) motion to compel discovery. (Mot. to Compel, ECF No. 91.) Defendants Cross Country Healthcare and Medical Doctor Associates, LLC, d/b/a Cross Country Locums (collectively Defendants) filed an opposition, (Defs.' Opp'n to Pl.'s Mot. to Compel, ECF No. 92), and Kattato filed a reply. (Reply Br., ECF No. 93.) Pursuant to Fed. R. Civ. P. 37(a)(1), Kattato certified the parties conferred in good faith to resolve this discovery dispute prior to filing his motion to compel discovery. (Mot. to Compel Discovery, at 9-10.) This motion was referred to me pursuant to 28 U.S.C. § 636(b)(1)(A). (Oral Order, ECF No. 35; Scheduling Order, ECF No. 44, at 4.) Neither party requested a hearing, and a hearing would not aid in the decisional process, so this motion is ripe for decision. For the reasons detailed below, Kattato's motion to compel discovery is **GRANTED**.

# I.    BACKGROUND

## A. Factual and Procedural Background of the Case

Kattato works as a certified registered nurse anesthetist and lives in Virginia. (Am. Compl., ECF No. 40, at 4.) From May 30, 2019, through the present, Kattato alleged he was on the National Do Not Call Registry. (*Id.*) In June 2021, Kattato conversed with Defendants—which provides recruiting services for healthcare workers—about potential travel healthcare jobs. (*Id.*) Kattato acknowledged that he consented to be contacted by Defendants about potential jobs. (*Id.* at 5.)

Eventually, Kattato grew frustrated with the text messages from Defendants. (*Id.*) On December 20, 2022, a representative of Cross Country Locums texted Kattato about job opportunities in New York, and Kattato requested that his phone number be removed from Defendants' contact list. (*Id.*) Again, on January 12, 2023, March 8, 2023, and March 24, 2023, Defendants allegedly texted Kattato about job opportunities, and each time Kattato texted Defendants and asked to be removed from their contact list. (*Id.* at 6-12.)

On August 4, 2025, Kattato filed an initial complaint and alleged Defendants violated the Telephone Consumer Protection Act (TCPA) in two ways: (1) Count I asserted Defendants violated the Internal Do Not Call List provisions in 47 U.S.C. § 227(c) and its implementing regulation at 47 C.F.R. § 64.1200(d); and Count II claimed Defendants violated the National Do Not Call List provision in 47 U.S.C. § 227(c)(5) and its implementing regulation at 47 C.F.R. § 64.1200(c). (Compl., ECF No. 1, at 18-21.) Kattato made allegations for a class action and sought to represent the putative class for Count I and Count II. (*Id.* at 15-18.)

On September 19, 2023, defendant Cross Country Healthcare filed an answer and denied all allegations in Kattato's initial complaint. (ECF No. 31, at 1.)

On December 13, 2023, the parties filed a joint Rule 26 discovery plan in advance of the Rule 16 conference. (ECF No. 37.)

On December 18, 2023, Kattato's amended complaint re-alleged the same two counts. (Am. Compl., at 18-21.) As with the initial complaint, Kattato's amended complaint made allegations for a putative class action. (*Id.* at 15-18.) Like the initial complaint, the amended complaint alleged Kattato's phone number was on the National Do Not Call Registry from May 30, 2019, through the present, but Defendants texted him job recruitment opportunities on four occasions, even though he requested to be removed from Defendants' contact list. (*Id.* at 4-12.) Upon information and belief, Kattato alleged Defendants engaged in the same conduct with other members of the putative class, and according to Kattato there are common questions of law and fact among the class members. (*Id.* at 16-17.)

On January 9, 2024, Defendants filed a joint answer to the amended complaint and denied all allegations. (Joint Answer to Am. Compl., ECF No. 46, at 1.) On March 6, 2024, the court granted a Stipulated Protective Order, which allowed the parties, *inter alia*, to designate discovery documents as confidential. (ECF No. 49, at 4.) On April 25, 2025, the court granted a joint motion to stay the case until June 6, 2025. (Minute Order, ECF No. 71.)  On May 28, 2025, a mediation session did not result in resolution of the matter. (Rep. of Mediation, ECF No. 75.) On June 20, 2025, the court entered an Order lifting the stay of this case. (Oral Order, ECF No. 79.)

On July 2, 2025, the court entered a Scheduling Order, (ECF No. 88, at 2), that set the non-expert fact discovery deadline as January 20, 2026. Additionally, the Scheduling

Order had three provisions on third-party discovery: (1) When a party served a subpoena on a non-party, then that serving party would send a copy of the subpoena to the other party; (2) if a party received, pursuant to a subpoena, documents from a third-party, then the receiving party would reproduce these documents within five business days and provide the documents to the non-receiving party; and (3) when a party scheduled a deposition of a third-party, the scheduling party would notify the non-scheduling party within 10 days. (*Id.*)

**B. Factual and Procedural Background of this Motion to Compel Discovery**

On June 11, 2025, according to Kattato, his counsel contacted Defendants' counsel about outstanding discovery issues. (Mot. to Compel, at 2.) Defendants noted that they retained new counsel in July 2025. (Defs.' Opp'n Pl.'s Mot. to Compel, at 2.) On August 14, 2025, Defendants supplemented, in part, their discovery responses, and maintained their objections. (Mot. to Compel at 2.) Defendants contend Kattato did not raise any objections to Defendants' discovery responses until December 2025. (Defs.' Opp'n Pl.'s Mot. to Compel, at 2.)

On December 5, 2025, Kattato requested a meet and confer conference with Defendants, but, according to Kattato, Defendants did not respond until December 18, 2025, when Defendants left a voicemail and said they would respond by December 22, 2025. (Mot. to Compel at 2-3.) On December 23, 2025, and December 30, 2025, Kattato contacted Defendants because he did not receive a response from Defendants on his earlier meet and confer request. (*Id.* at 3.) On January 5, 2026, Kattato renewed his request for a meet and confer conference. (*Id.*) The parties' unsuccessful meet and confer was held on January 6, 2026. (*Id.*)

On January 14, 2026, a Minute Order set the schedule for discovery motions. (ECF No. 90.) Pursuant to the Minute Order, on January 20, 2026, Kattato moved to compel discovery, (ECF No. 91); on January 27, 2026, Defendants filed an opposition, (ECF No. 92); and on January 30, 2026, Kattato filed a reply. (ECF No. 93.)

## II.    LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 26 and Discovery

Civil discovery is "broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). The Federal Rules of Civil Procedure outline the general scope of civil discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) limits the scope of civil discovery in two fundamental ways: (1) relevance and (2) proportionality. *Makina v. Kimya Endustrisi A.S.*, No. 3:22-CV-00066, 2025 WL 1709679, at *4 (W.D. Va. June 18, 2025) (citing *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019)).

In discovery, "relevance is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Warner v. Centra Health, Inc.*, No. 6:19-CV-55, 2020 WL 6596699, at *2 (W.D. Va. Nov. 11, 2020) (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted). Relevance "'is not, on its own, a high

bar.'" *Socol v. Haas*, No. 3:18-CV-00090, 2021 WL 2635847, at *3 (W.D. Va. June 25, 2021) (quoting *Jordan*, 921 F.3d at 188). However, "[i]nformation not logically related to a claim or defense asserted in the pleadings . . . generally is not discoverable." *Doe v. Mast*, No. 3:22-CV-00049, 2023 WL 8481049, at *1 (W.D. Va. Dec. 7, 2023) (citing *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 416 (D. Md. 2005)). "The district court has broad discretion in determining relevance for discovery purposes." *Hicks v. Houston Baptist Univ.*, No. 5:17-CV-629, 2019 WL 7599887, at *3 (E.D.N.C. Nov. 12, 2019) (citing *Seaside Farm, Inc. v. United States,* 842 F.3d 853, 860 (4th Cir. 2016)).

"[E]ven relevant information may not be discoverable if it is not 'proportional to the needs of the case.'" *Gilmore v. Jones*, 339 F.R.D. 111, 120 (W.D. Va. 2021) (quoting Fed. R. Civ. P. 26(b)(1)). As noted above, courts evaluate proportionality based on the following factors: "'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Orlando v. Neal*, No. 5:23-CV-00012, 2023 WL 7413344, at *2 (W.D. Va. Nov. 9, 2023) (quoting Fed. R. Civ. P. 26(b)(1)).

If a party fails to respond to discovery, the requesting party may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). "District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.,* 43 F.3d 922, 929 (4th Cir. 1995)).

When the requesting party has made a *prima facie* showing that the requested materials are discoverable, the burden shifts to the party resisting discovery, and the party resisting discovery must show (1) the requested discovery is not relevant, or (2) the

6

potential harm caused by discovery outweighs the ordinary presumption of broad discovery. *Eramo*, 314 F.R.D. at 209 (quoting *Desrosiers v. MAG Industrial Automation Sys., LLC,* 675 F.Supp.2d 598, 601 (D. Md. 2009)). For a relevance objection to a discovery request to be adequate, the relevance objection must be "'plain enough and specific enough so that the court can understand in what way'" the requested discovery is objectionable. *Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *4 (E.D. Va. Dec. 23, 2019) (quoting *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)). When a party objects to a discovery request because of an allegedly undue burden, the objecting party "'must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence.'" *Page v. Bragg Communities, LLC*, No. 5:20-CV-336-D, 2022 WL 17724407, at *4 (E.D.N.C. Dec. 15, 2022) (quoting *Wilson v. Wexford Med.*, No. 3:18-CV-00890, 2020 WL 930112, at *3 (S.D. W. Va. Feb. 26, 2020)). An objecting party fails to meet its burden when the objecting party "merely [states] that a discovery request is overbroad or unduly burdensome." *Spendlove*, 2019 WL 7143664, at *4 (quoting *Cappetta v. GC Services Ltd.*, No. 3:08-CV-288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008)).

Moreover, the Federal Rules of Civil Procedure create the following provision for electronically stored information (ESI):

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

7

Fed. R. Civ. P. 26(b)(2)(B). "Relevant ESI may still not be discoverable under Rule 26 if the party can show that the information is 'not reasonably accessible because of undue burden or cost.'" *CFA Inst. v. Am. Soc'y of Pension Pros. & Actuaries*, No. 3:19-CV-00012, 2020 WL 555391, at *4 (W.D. Va. Feb. 4, 2020) (quoting *Wagoner v. Lewis Gale Med. Ctr.*, LLC, 2016 WL 3893135, at *2 (W.D. Va. July 14, 2016)).

**B. Federal Rule of Civil Procedure 23 and Class Actions**

Rule 23(a) of the Federal Rules of Civil Procedure permits class actions when the following prerequisites are met:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). Rule 23 and Rule 26 should be "considered together" when determining whether to allow discovery during the pre-certification phase of a putative class action. *Dixon v. Blibaum & Assocs., P.C.*, No. CV JRR-24-0029, 2025 WL 1920006, at *3 (D. Md. July 11, 2025). In the Fourth Circuit, courts generally allow "plaintiffs to engage in 'pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met.'" *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 185–86 (D. Md. 2003) (quoting *Moore v. Indian Harbor Ins. Co.*, No. 3:22-CV-00385, 2023 WL 2520582, at *9 (S.D.W. Va. Mar. 14, 2023)). Discovery before certification of a class is usually permitted because "class determinations generally involve[] considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Moore v. Indian Harbor Ins. Co.*, No. 3:22-CV-00385, 2023 WL 2520582, at *9 (S.D.W. Va. Mar. 14, 2023) (quoting *Miller v.*

*Baltimore Gas & Elec. Co.*, 202 F.R.D. 195, 200 (D. Md. 2001)). Whether "'to permit discovery of contact information for putative class members prior to conditional certification of a case lies within the discretion of the district court.'" *Spendlove*, 2019 WL 7143664, at *9 (quoting *Pontones v. San Jose Restaurant*, No. 5:18-CV-219-D, 2019 WL 1548897, at *2 (E.D.N.C. Apr. 9, 2019)).

## C. The TCPA

The "'TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls.'" *Wilson v. Wells Fargo Bank, N.A.*, No. CV-22101980, 2021 WL 8362388, at *4 (D.S.C. Sept. 9, 2021), *report and recommendation adopted*, No. CV 2:21-1980, 2022 WL 2914490 (D.S.C. July 25, 2022) (quoting *Stewart v. T-Mobile USA, Inc.*, 124 F. Supp. 3d 729, 732 (D.S.C. Aug. 28, 2015)). Specifically, the "TCPA was intended to combat, among other things, the proliferation of automated telemarketing calls (known as 'robocalls') to private residences and cell phones because Congress viewed the calls a nuisance and an invasion of privacy." *Connor v. Priority Concepts, Inc.*, No. 2:23-CV-3726, 2024 WL 199138, at *2 (D.S.C. Jan. 18, 2024) (citing *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 375 (2012)). Because the TCPA is a remedial statute, courts have held the TCPA should be "construed to benefit consumers." *Stamper v. Medicredit, Inc.*, No. CV 7:18-1407-BHH-KFM, 2019 WL 2028598, at *2 (D.S.C. Mar. 27, 2019), *report and recommendation adopted*, No. CV 7:18-1407, 2019 WL 2026828 (D.S.C. May 8, 2019) (quoting *Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265, 271 (3rd Cir. 2013)).

The "TCPA prohibits calls to numbers on the national Do-Not-Call registry." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 648 (4th Cir. 2019). In addition to the Do-Not-Call registry, "companies are also expected to keep individual Do-Not-Call lists,

reflecting persons who have directly told the company that they do not wish to receive further solicitations." *Id.* at 649 (citing 47 C.F.R. § 64.1200(d)).

As noted above, Kattato brought Count I (about the Internal Do Not Call List) pursuant to 47 C.F.R. § 64.1200(d),[1] which is a regulation implementing the TCPA. (Am. Compl., at 18-20.) 47 C.F.R. § 64.1200(d) provides the following:

> If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

---

[1] The court notes that some courts in the Fourth Circuit have held there is a private right of action pursuant to 47 C.F.R. § 64.1200(d), but other courts in the Fourth Circuit have held there is no private right of action under 47 C.F.R. § 64.1200(d). *See Fischman v Mediastratx, LLC*, No. 2:20-CV-83-D, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021) (finding private right of action to exist under 47 C.F.R. § 64.1200(d)); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-CV-486, 2024 WL 4190513, at *9 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) (quoting *Ford v. NaturaLawn of Am., Inc.*, No. 24-354 PJM, 2024 WL 3161762, at *6-7 (D. Md. June 25, 2024) (noting that this "Court concurs with . . . the cases that have found a private right to enforce Section 64.1200(d) under subsection (c) of the TCPA"); *but see also Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 982 (D. Md. 2019) (recognizing the United States Court of Appeals for the Fourth Circuit has not addressed whether 47 C.F.R § 64.1200(d) provides a private right of action). Neither party raised this issue, and the court declines to *sua sponte* raise this issue.

47 C.F.R. § 64.1200(d)(3). To state a claim pursuant to 47 C.F.R. § 64.1200(d)(3), a plaintiff must allege the following: "(1) more than one telephone call was made to her within any 12-month period; (2) the calls were made for the purpose of encouraging the purchase or rental or, or investment in, property, goods, or services; (3) the calls were made by or on behalf of the same entity; (4) the telemarketing entity failed to honor the recipient's prior do-not-call request; [and] (5) the calls occurred within a reasonable time after the date h[is] do-not-call request was made." *Ford*, 2024 WL 3161762, at *7 (citing *Cleveland v. Nextmarvel, Inc.*, No. CV TDC-23-1918, 2024 WL 198212, at *3 (D. Md. Jan. 18, 2024)).

Kattato's Count II (about the National Do Not Call Registry) is made pursuant to 47 U.S.C. § 227(c)(5). (Am. Compl., at 20-22.) The plain language of the TCPA creates a private right of action:

> Private right of action
> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State-- (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions.

47 U.S.C. § 227(c)(5); *see also Ford*, 2024 WL 3161762, at *3 (noting "the TCPA provides a private right of action"). Thus, to state a TCPA claim pursuant to 47 U.S.C. § 227(c)(5), a plaintiff must allege the following: (1) a telephone solicitation was placed to a phone number on the National Do Not Call Registry; and (2) more than one such call was made to the phone number within a 12-month period. *Hudson v. SNVA, LLC*, No. CV TJS-21-

2617, 2022 WL 3134424, at *3 (D. Md. July 28, 2022) (citing *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 649 (4th Cir. 2019)).

## III.    DISCUSSION

### A. Kattato's Four Discovery Requests

Kattato's discovery requests at issue were initially propounded in Interrogatories Nos. 10 and 12 and Request for Production No. 9. (Mot. to Compel Discovery, at 4-8.) However, Kattato's motion to compel discovery concluded with the following request: "Plaintiff respectfully requests an order compelling Defendant to supplement its discovery with respect to the 4 numbered items as set forth in Section III (a) *supra*." (*Id.* at 10.) Kattato also twice mentioned in his motion to compel that his current discovery requests are "pared back" from his original discovery requests. (*Id.* at 4, 7.) The court interprets Kattato's motion to compel as an amendment to his original discovery requests in Interrogatories Nos. 10 and 12 and Request for Production No. 9 because the motion to compel included the following "pared back" discovery requests[2]:

(1) **Discovery Request III.a.1**[3]: "The phone numbers for those persons meeting the Internal Do Not Call List class definition, which Plaintiff defines as 'From August 4, 2019 through the present, all persons to whom, Defendants (or Defendants' agent) initiated or authorized the initiation of two or more text messages about a health-care position or health-care referral opportunity more than 30 days following a request by such individual not to receive such communications, where the request was made within five years preceding the call or text.'" (*Id.* at 4.)

(2) **Discovery Request III.a.2**: "Information/documents on dates texts were sent to each phone number identified in number one, as well as the date of the text recipient's request not to receive communications." (*Id.* at 5.)

---

[2] Also, the parties' meet and confer conferences likely modified and clarified Kattato's discovery requests. However, the parties did not explicitly mention this in their briefing on the motion to compel.

[3] In Kattato's motion to compel, he labeled his four discovery requests as III.a.1, III.a.2, III.a.3, and III.a.4. (Mot. to Compel, at 4-8.) Here, for the sake of convenience and clarity, the court maintains the same labeling system that Kattato used in his motion to compel.

(3) **Discovery Request III.a.3**: "The phone numbers for those meeting the following portion of the National Do Not Call Registry class definition[4]: From August 4, 2019 through the present, all persons whom Defendants (or Defendants' agents) texted about a health-care position or health-care referral opportunity two or more times in a twelve-month period." (*Id.* at 6-7.)

(4) **Discovery Request III.a.4**: "Information/documents on dates texts were sent to each phone number identified in number three." (*Id.* at 8.)

Defendants did not object to Kattato's right to amend his discovery requests. (*See generally* Defs.' Opp'n to Pl.'s Mot. to Compel, at 1-9.) Kattato's reply brief confirms that the above clarified discovery requests are the operative discovery requests. (Pl.'s Reply Br., at 11.) Thus, the court treats the four discovery requests in Kattato's motion to compel (and reproduced above) as the operative discovery requests in this motion to compel.

## B. Kattato and Defendants' Arguments on the Motion to Compel

Kattato argues the discovery requests in his motion to compel are narrower and clearer than his earlier discovery requests. (Mot. to Compel, at 8.) Also, Kattato claims Defendants erroneously argue his theory of liability changed, but Kattato rebuts this argument by asserting he merely changed the putative class definitions. (*Id.* at 9.) In the alternative, Kattato avers that even if he had changed his theory of liability, Defendants had a duty to supplement their discovery responses when they became aware that their earlier discovery responses were no longer complete or correct. (*Id.*) In closing, Kattato

---

[4] In the text of Kattato's motion to compel, his third request for discovery included a footnote after the word "definition," and the following text is reproduced from footnote six in Kattato's motion to compel:

Plaintiff defines this class as follows: From August 4, 2019 through the present, all persons who had their phone number on the National Do Not Call Registry and whom Defendants (or Defendants' agents) texted that phone number about a health-care position or health-care referral opportunity two or more times in a twelve-month period when that phone number had been on the National Do Not Call Registry for at least 31 days.

(*Id.* at 6.)

submits that Defendants should have raised their arguments about the merits of this case in a motion to dismiss or motion for judgment on the pleadings, but Defendants failed to do so.[5] (*Id.*)

On discovery request III.a.1, Kattato argues he requests only phone numbers of possible class members who received text messages about healthcare job referrals from Defendants. (*Id.* at 4-5.) Regarding discovery request III.a.2, Kattato contends he needs the dates of text messages—that were sent to persons who meet the Internal Do Not Call List class definition—because he needs to confirm class identifiability and membership. (*Id.* at 6.) To justify discovery request III.a.3, Kattato avers he needs the phone numbers of persons who were texted two or more times in a 12 month period to identify whether these phone numbers were registered on the National Do Not Call Registry. (*Id.* at 8.) Finally, for discovery request III.a.4, Kattato submits that he needs documents about recordkeeping because it is relevant for class identifiability and membership. (*Id.*)

In response, Defendants argue Kattato's discovery requests are irrelevant because the TCPA does not apply, so Kattato cannot obtain a class certification. (Defs.' Opp'n to Pl.'s Mot. to Compel., at 4-6.) They argue the TCPA does not apply here because Defendants were engaged in recruiting, not telemarketing, and the TCPA applies to telemarketing, not recruiting. (*Id.*) Also, Defendants contend Kattato's discovery requests are disproportionate because third-party vendors[6] (eRecruit and TextUs) have the

---

[5] Some courts have held in TCPA putative class actions that courts "will not permit [d]efendant 'on one hand to contest class certification and on the other hand deny [P]laintiff the discovery relevant to its position that a class should be certified.'" *Duke v. Am. Express Co.*, No. CV-23-00125, 2025 WL 1918643, at *4 (D. Ariz. July 11, 2025) (quoting *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013)).

[6] The Scheduling Order established a process for third-party subpoenas, (Scheduling Order, at 3), but neither party raised this issue in the briefing about the motion to compel. Because neither party raised this issue, the court declines to raise this issue *sua sponte*.

materials[7] Kattato seeks, so production would cause an undue burden on Defendants. (*Id.* at 7-8.) Finally, Defendants contend they have fulfilled their discovery obligations and produced significant quantities of discoverable materials. (*Id.* at 8-9.)

In his reply brief, Kattato argues the discovery he seeks is relevant to his TCPA claims, and—assuming the TCPA claim is valid—Defendants failed to articulate valid relevance objections about his discovery requests. (Pl.'s Reply Br., at 2-3.) According to Kattato, Defendants' objections are overly vague. (*Id.* at 6-9.) Kattato asserts Defendants failed to comply with their discovery obligations. (*Id.* at 9.) Moreover, Kattato contends Defendants' argument that he failed to comply with his discovery obligation is untrue and irrelevant. (*Id.* at 9-11.)

## C. Relevance and Proportionality Analysis of Kattato's Discovery Requests

### a. Kattato's discovery requests III.a.1, III.a.2, III.a.3, and III.a.4 are relevant

For the reasons below, I find Kattato's discovery requests are relevant. Also, for the sake of clarity, the court reiterates that Count I pertains to the Internal Do Not Call List, and Count II relates to the National Do Not Call Registry. (Am. Compl., at 18-22.)

In the case of *In re Monitronics International Telephone Consumer Protection Act Litigation*, a district court in the Fourth Circuit granted plaintiff's motion to compel the following discovery: (1) an interrogatory about actions defendant took to ensure compliance with the TCPA; (2) a request for production for all documents concerning actions defendant took to ensure compliance with the TCPA; (3) a request for production

---

[7] Defendant's opposition to Kattato's motion to compel did not clearly assert who has possession, custody, and control over the discovery materials that Kattato seeks. (Defs.' Opp'n to Pl.'s Mot. to Compel, at 8.) It is not clear to the court if Defendants, eRecruit, or TextUs have possession, custody, and control over the discovery materials Kattato seeks. However, the onus was on Defendants to make this argument clear. Thus, the court will not *sua sponte* raise this issue.

for all documents concerning verbal complaints of illegal telemarketing; (4) a request for production for all documents concerning compliance with the TCPA and state telemarketing laws; (5) a request for production for all documents concerning defendants' knowledge of allegations of illegal telemarketing by defendants' authorized dealers; and (6) a request for production of all documents concerning telemarketing complaints, this litigation, efforts taken to comply with the TCPA, penalties or disciplinary actions taken for non-compliance with the TCPA and state telemarking laws, knowledge of defendants' allegedly unlawful telemarketing; marketing agreements between defendants and their agents, and compensation paid to defendants' agents. No. 5:11-CV-90, 2014 WL 316476, at *2–3 (N.D.W. Va. Jan. 28, 2014).

Here, in Count I in the Amended Complaint, pursuant to 47 C.F.R. § 64.1200(d)(3), Kattato must allege "(1) more than one telephone call was made to h[im] within any 12-month period; (2) the calls were made for the purpose of encouraging the purchase or rental or, or investment in, property, goods, or services; (3) the calls were made by or on behalf of the same entity; (4) the telemarketing entity failed to honor the recipient's prior do-not-call request; [and] (5) the calls occurred within a reasonable time after the date h[is] do-not-call request was made." *Ford*, 2024 WL 3161762, at *7. I find discovery request III.a.1 is relevant because it requests the phone numbers of putative class members who were (1) on the Internal Do Not Call Registry from August 4, 2019 through the present; and (2) received Defendants' (or Defendants' agents) text messages about healthcare position or healthcare referral opportunity two or more times in a twelve-month period when that phone number had been on the Internal Do Not Call Registry for at least 31 days. *See In re Monitronics*, 2014 WL 316476, at *2–3.

Kattato's discovery request III.a.2 is also relevant to Count I because discovery request III.a.2 seeks the information and documents on the "dates texts were sent to each phone number identified in number one, as well as the date of the text recipient's request not to receive communications." (*Id.* at 5.) Another court in the case of *In re Monitronics* granted a motion to compel on a broader range of materials that were relevant to TCPA claims. *See* 2014 WL 316476, at *2–3. I find Kattato's discovery requests are more focused on the relevant issues in this case than the discovery materials sought in the case of *In re Monitronics*. Thus, I find discovery requests III.a.1 and III.a.2 are relevant to Kattato's asserted claims. *See e.g.*, *Van Connor v. One Life Am., Inc.*, No. 6:19-CV-3283, 2021 WL 12312822, at *2-4 (D.S.C. Aug. 25, 2021) (granting plaintiff's motion to compel in a TCPA putative class action where plaintiff requested production of "[a]ll communications with any vendors that contacted the Plaintiff regarding telemarketing or customer acquisition," and (2) "[a]ll internal communications at your company regarding any vendors that contacted the Plaintiff").

Also, in *Beard v. John Hiester Chevrolet*, another district court in the Fourth Circuit granted a motion to compel in a TCPA putative class action case because the court found the following requested discovery materials were relevant to class certification: (1) documents about defendant's relationship with third-party vendors involved in making phone calls that allegedly violated the TCPA; (2) call logs and other information about individuals who were contacted by defendant; (3) documents about whether putative class members consented to calls; (4) documents identifying revenue generated by the alleged calls; and (5) the names of employees involved in creating the pre-recorded messages. 5:21-CV-173-D, 2022 WL 811045, at *2 (E.D.N.C. Mar. 16, 2022).

For Count II, pursuant to 47 U.S.C. § 227(c)(5), Kattato is required to establish the following two elements: (1) a telephone solicitation was placed to a phone number on the National Do Not Call Registry; and (2) more than one such call was made to the phone number within a 12-month period. *Hudson*, 2022 WL 3134424, at *3. The discovery sought in this case is similar to the discovery sought in *Beard*. 2022 WL 811045, at *2. Kattato's discovery request III.a.3 directly addresses two of the elements necessary to bring a 47 U.S.C. § 227(c)(5) claim. Like in *Beard*, I find discovery request III.a.3 is relevant because it requests the phone numbers of putative class members who were (1) on the National Do Not Call Registry from August 4, 2019 through the present; and (2) received Defendants' (or Defendants' agents) text messages about healthcare position or healthcare referral opportunity two or more times in a twelve-month period when that phone number had been on the National Do Not Call Registry for at least 31 days. *See Beard*, 2022 WL 811045, at *2 (granting a motion to compel, *inter alia*, call logs and documents about whether putative class members consented to calls in a TCPA case).

Also, for Count II, discovery request III.a.4 seeks "[i]nformation/documents on dates texts were sent to each phone number identified in number three." (*Id.* at 8.) The dates when the alleged text messages were sent is essential to establish whether Defendants sent the text messages after the putative class members were registered on the National Do Not Call Registry, so I find discovery request III.a.4 is relevant to Count II, which is the 47 U.S.C. § 227(c)(5) claim. In conclusion, I find discovery requests III.a.3 and III.a.4 are relevant. *See Friel v. ETN Am. Inc.*, No. 3:25-CV-882, 2026 WL 146672, at *2 (M.D. Pa. Jan. 20, 2026) (granting a motion to compel production in a TCPA putative class action where plaintiff sought to compel an response to the following interrogatory:

"[i]dentify the name, address, and contact information of the person(s) or entity(ies) that provided the call lead resulting in [defendant's] alleged calls to plaintiff").

In summary, I find Kattato's discovery requests III.a.1, III.a.2, III.a.3, and III.a.4 are relevant.

### b. Kattato's discovery requests III.a.1, III.a.2, III.a.3, and III.a.4 are proportional

As noted above, objections to motions to compel based on the grounds of undue burden "'must allege specific facts that indicate the nature and extent of the burden, usually by affidavits or other reliable evidence.'" *Page*, 2022 WL 17724407, at *4 (quoting *Wilson*, 2020 WL 930112, at *3). For example, in one case, the opposing party estimated—by an affidavit—that the cost of complying with a motion to compel ESI discovery was $15,00.00, and the court granted the motion to compel ESI when the cost was lowered to $7,500.00. *Id.* Also, another court in the Fourth Circuit held that in a TCPA putative class action case discovery requests for "call logs and customer lists" were "relevant and not unduly burdensome," so the court granted plaintiff's motion to compel. *Jones v. Safe Streets USA LLC*, No. 5:19-CV-394, 2020 WL 3261096, at *3 (E.D.N.C. June 16, 2020) (citing *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017)).

Here, Defendants cite to reliable evidence in the form of deposition testimony, but Defendants' opposition merely represents that the "applicant tracking system" is "a very clunky system." (Defs.' Opp'n to Pl.'s Mot. to Compel, at 8.) Defendants did not submit an affidavit estimating the cost of compliance with the motion to compel. (*See generally id.* at 1-9.) I do not find Defendants have met their burden to show that Kattato's discovery requests are disproportionate and create an undue burden. *See Spendlove*, 2019 WL

7143664, at *4. Thus, Defendants failed to meet their burden to oppose Kattato's motion

to compel, so this alone would be sufficient to grant Kattato's motion to compel. *See*

*Spendlove*, 2019 WL 7143664, at *4; *Eramo*, 314 F.R.D. at 209.

However, for the sake of completeness, the court considers in turn all the

proportionality factors[8] in Fed. R. Civ. P. 26(b)(1): (1) the importance of the issues at stake

in the action; (2) the amount in controversy; (3) parties' relative access to relevant

information; (4) the parties' resources; (5) the importance of the discovery in resolving

the issues; and (6) whether the burden or expense of the proposed discovery outweighs

its likely benefit. Fed. R. Civ. P. 26(b)(1). Also, the court notes that the parties failed to

address all the proportionality factors in Fed. R. Civ. P. 26(b)(1) in their briefing about

the motion to compel.

On the first factor about the importance of the issues at stake in the action, the

TCPA was designed to "'protect consumer privacy interests'" and "'seeks primarily to

protect subscribers from unrestricted commercial telemarketing calls.'" *Worsham v.*

*Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *3 (D. Md. Sept. 2, 2016),

*aff'd*, 678 F. App'x 165 (4th Cir. 2017) (quoting Rules and Regulations Implementing the

TCPA of 1991, 68 Fed. Reg. 44,144, 44,150, 44,165 (July 25, 2003)). Here, I find

potentially vindicating the privacy interests of the putative class members is an important

issue at stake in this action, and granting Kattato's motion to compel would advance the

privacy interests of the putative class members. *See United States v. Glob. Mortg.*

*Funding, Inc.*, No. CV-071275, 2008 WL 5264986, at *3 (C.D. Cal. May 15, 2008) (quoting

---

[8]  Fed. R. Civ. P. 26(b)(1) does not call the six proportionality considerations "factors," but some courts refer to the six considerations in Fed. R. Civ. P. 26(b)(1) as the "proportionality factors," *see Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*, No. 5:15-CV-00037, 2016 WL 4287929, at *2 n.2 (E.D.N.C. Aug. 15, 2016), so for the sake of convenience the court uses the term "proportionality factors."

*Mainstream Marketing Servs., Inc. v. FTC,* 358 F.3d 1228, 1232–33 (10th Cir.2004))
(noting the TCPA reflects "'important interests in safeguarding personal privacy and
reducing the danger of telemarketing abuse'").

On the second factor involving the amount in controversy, courts have held that
the amount in controversy in TCPA class actions is the amount of statutory damages
multiplied by the number of class members. *See Meridian Sec. Ins. Co. v. Sadowski*, 441
F.3d 536, 537 (7th Cir. 2006) (citing *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d
446 (7th Cir.2005)) (holding "$1,500 multiplied by the number of class members is the
amount in controversy" in TCPA actions) (internal quotation marks omitted); *see also
Skipper v. CareFirst BlueChoice, Inc.*, No. CV DLB-21-1022, 2023 WL 2410858, at *3 (D.
Md. Mar. 8, 2023) (noting "amount in controversy is calculated by multiplying the
number of potential class members by the average damages each class member
sustained"). On motions to compel, courts also consider the amount in controversy in
comparison with the cost of complying with a motion to compel discovery.[9] *See Alley v.
MTD Prods., Inc.*, No. 3:17-CV-3, 2018 WL 4689112, at *4 (W.D. Pa. Sept. 28, 2018)
(noting the court compared "the amount in controversy to the cost of complying with
Plaintiff's discovery requests" when considering discovery requests). Here, Kattato alleges
the "aggregate damages sustained by the Classes are potentially in the millions of dollars"
because, according to Kattato, there are thousands of potential class members, and they
are entitled to statutory damages of $500.00 to $1,500.00 per violation of the TCPA. (Am.

---

[9] However, in motions to compel discovery, the amount in controversy is not determinative of
whether an important legal right is at issue, so some courts find the amount in controversy is not a
determinative of whether to grant a motion to compel discovery. *See Hayse v. City of Melvindale*, No. CV
17-13294, 2018 WL 11176493, at *6 (E.D. Mich. Apr. 10, 2018) (citing Hon. Elizabeth D. Laporte, Jonathan
M. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure
26*, 9 FED. CTS. L. REV. 19, 62-61 (2015)).

Compl., at 16-20.) However, Defendants contested and denied Kattato's allegation about the amount in controversy. (Joint Answer to Am. Compl., at 11-12.) As noted above, Defendants failed to estimate the cost of their compliance with Kattato's discovery requests, (*see generally* Defs.' Opp'n to Pl.'s Mot. to Compel, at 1-9); however, in the briefing for this motion to compel, neither party clearly showed what the amount in controversy is. Thus, I find this second factor is neutral.

On the third factor about relative access to relevant information, in TCPA cases courts have held that compelling a defendant's communications with third-party vendors is proportional, and the defendant had greater access to third-party vendors' discoverable materials than plaintiffs. *See Grant v. Regal Auto. Grp., Inc.*, No. 8:19-CV-363-T-23, 2020 WL 3250075, at *2 (M.D. Fla. Mar. 12, 2020) (noting the "Court therefore finds that Defendant's communications with third-party vendors regarding RVM [ringless voicemail] campaigns during the pertinent time period are relevant to this issue and proportional to the needs of the case"). Here, I find Defendants have greater access to the discovery sought from eRecruit and TextUs than Kattato, so I find this factor weighs in favor of granting Kattato's motion to compel. *See Wilson v. MAH Grp., Inc.*, No. 6:25-CV-00855, 2025 WL 3653800, at *2 (D. Or. Dec. 17, 2025) (granting a motion to compel in a TCPA case for "all documents containing any of the following information for each outbound telemarketing call or text message sent by you or your *vendors*, including those made to the Plaintiff: a) the date and time; b) the caller ID; c) any recorded message used; d) the result; e) identifying information for the recipient; and f) any other information stored by the call detail records") (emphasis added).

On the fourth factor regarding the parties' resources, the Fed. R. Civ. P. 26(b)(1) Advisory Committee's note observed "consideration of the parties' resources does not

foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party," so the "court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes to 2015 Amendment. However, some courts have found that if the party resisting discovery has significantly more resources than the party requesting discovery, then this factor weighs in favor granting the motion to compel discovery. *See Johnson v. CoreCivic, Inc.*, No. 18-CV-1051, 2019 WL 5089086, at *3 (W.D. Tenn. Oct. 10, 2019) (finding that because the party resisting production of discovery had significantly more resources than the party requesting discovery, so this factor favored granting the motion to compel discovery). Here, Kattato alleged Defendants generate billions of dollars in revenues, (Am. Compl., at 3), but Defendants denied that allegation. (Joint Answer to Am. Compl., at 11-12.) I find the fourth factor is neutral because the parties failed to make sufficient showings about this factor in their arguments about the motion to compel.

On the fifth factor relating to the importance of the discovery in resolving the issues in this case, courts have found that pre-class certification discovery is crucial for resolving whether plaintiff has met the requirements for class certification. *See Drake v. Mirand Response Sys., Inc.*, No. 119-CV-01458, 2020 WL 4004058, at *6 (S.D. Ind. July 15, 2020) (finding plaintiff "must be provided with some discovery to assist her presentation of evidence regarding numerosity, commonality, typicality, adequacy (as that element overlaps with commonality and typicality), and predominance/superiority"). Here, I find Kattato's discovery requests are necessary to resolve issues in this case, so this factor leans towards granting Kattato's motion to compel. *See Kyle v. Fed. Trade Comm'n*, No. 21-

MC-9004, 2021 WL 1407960, at *3 (W.D. Mo. Apr. 14, 2021) (granting a motion to compel discovery of contact information and date of registration on the National Do Not Call Registry because these discovery materials were necessary for plaintiff to seek class certification); *see also Shapiro v. Dynamic Recovery Sols., LLC*, No. 18-CV-60035, 2018 WL 8130559, at *3 (S.D. Fla. July 26, 2018) (citing *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2009) (holding that for the TCPA claims, the "parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified").

On the sixth factor about whether the costs would be outweighed by the benefits, courts consider whether the party opposing the motion to compel has articulated what the estimated costs of compliance with the motion to compel would be. *Hicks*, 2020 WL 13895224, at *5. Here, as noted above, I find Defendants failed to quantify or at least provide a rough estimate of the costs of producing the requested discovery, (*see generally* Defs.' Opp'n to Pl.'s Mot. to Compel, at 1-9), so this sixth factor supports granting Kattato's motion to compel. *See Lewis v. Register.com, Inc.*, No. 1:25-CV-00275, 2025 WL 2662338, at *6 (S.D. Ind. Sept. 16, 2025) ("[d]efendant does not attempt to quantify this burden in any way; accordingly, they have not demonstrated that any such burden is disproportionate or otherwise sufficient to outweigh Plaintiff's need for the information").

In summary, I find the first, third, fifth, and sixth proportionality factors favor granting Kattato's motion to compel. However, the second and fourth proportionality factors are relatively neutral. Given that the majority of the factors favor a finding of proportionality, I find Kattato's discovery requests III.a.1, III.a.2, III.a.3, and III.a.4 are proportional.

## IV.    CONCLUSION

Based on the above reasons, I find Kattato's discovery requests III.a.1, III.a.2, III.a.3, and III.a.4 are relevant and proportional, so Kattato's motion to compel discovery (ECF No. 91), is **GRANTED**. Defendants are **ORDERED** to produce to Kattato the materials identified in Kattato's motion to compel discovery (ECF No. 91), no later than 30 days after the entry of this Memorandum Opinion and Order.

It is so **ORDERED**.

Entered: February 23, 2026

C. Kailani Memmer
United States Magistrate Judge

25